[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11678

Non-Argument Calendar

_____

JOAN RILEY,
LINDA SCOTT,
Individually and on behalf of all others similarly situated,

Plaintiffs-Appellants,

*versus*

HERITAGE PROPERTY & CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

2                    Opinion of the Court                    23-11678

D.C. Docket No. 1:22-cv-22893-RNS

_____

_____

No. 23-12283

Non-Argument Calendar

_____

JAMES WILLIE WILLIAMS,
WILLIE MAE WILLIAMS,
CRISTOBALINA FERNANDEZ,
NERITZA CAIN,

                                        Plaintiffs-Appellants,

*versus*

UNIVERSAL PROPERTY & CASUALTY INSURANCE CO.,

                                        Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-22890-KMW

_____

Before ROSENBAUM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Appellants bring breach-of-contract actions against two insurance companies for failure to pay interest on untimely payments for awarded claims. The district courts below dismissed Appellants' actions because: (1) Appellants failed to identify an express contractual term in the applicable insurance policies that obligated the insurers to pay interest in the event of late payment and (2) Appellants' attempt to predicate their claims on Fla. Stat. § 627.70131(5)(a)'s interest-payment provision was precluded by Subsection 5(a)'s bar on private actions for violations of its provisions. After careful review, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Joan Riley and Linda Scott (together, "the *Riley* Plaintiffs") purchased residential property insurance policies from Defendant Heritage Property & Casualty Insurance Company. Plaintiffs Willie James Williams, Willie Mae Williams, Cristobalina Fernandez, and Neritza Cain (collectively, the *Williams* Plaintiffs, and together with the *Riley* Plaintiffs, "Appellants") purchased residential property insurance policies from Defendant Universal Property and Casualty Insurance Company (together with Heritage, "Appellees").

Primarily due to Hurricane Irma back in 2017, Appellants' respective homes incurred damage, which Appellants sought coverage for from Appellees. The parties failed to agree on the value of the damage in each case, so they submitted their disputes to

appraisal panels which awarded each Appellant some amount of compensation. Appellees paid out the prescribed awards, but Appellants allege that Appellees failed to make these payments in a timely manner, triggering an obligation to pay interest on those payments. Appellees did not pay the interest. Accordingly, the *Riley* Plaintiffs brought suit against Heritage for breach-of-contract, contending that their policies' loss-payment provision entitled them to interest. And the *Williams* Plaintiffs filed a similar suit against Universal.

Appellants' insurance policies' loss payment provisions are substantively similar.[1] As relevant to this appeal, none of the

---

[1] The *Riley* Plaintiffs' policies provided:

> Within 90 days after we receive notice of an initial, reopened, or supplemental property insurance claim from you, where for each initial, reopened, or supplemental property insurance claim, we shall pay or deny such claim or portion of such claim, unless there are circumstances beyond our control which reasonably prevent such payment.

> Paragraph c. above does not form the sole basis for a private cause of action against us.

The *Williams* Plaintiffs' policies provided:

> Under Florida Statutes we are required to pay or deny an initial, reopened, or supplemental property insurance claim, within ninety (90) days of notice of such claim unless there are reasonable circumstances which prevent us from so doing.

> Our failure to comply with this paragraph shall not form the sole basis for an action against us for breach of contract under this policy or for benefits under this policy.

policies contained a term obligating Appellees to pay interest in the event of late payment. But Appellants claimed that their policies implicitly incorporated Fla. Stat. § 627.70131(5)(a)[2], which mandates an insurer to pay interest in the event it fails to make payment on a claim within a statutorily prescribed time.

Appellees moved to dismiss the respective actions, which both district courts granted with prejudice. The district courts found that because Appellants' breach-of-contract actions were ultimately predicated on Subsection 5(a), they ran headlong into Subsection 5(a)'s bar on pursuing a private cause of action based solely on an insurer's failure to comply with the subsection. Both decisions were timely appealed, and in light of the overlapping factual allegations and basis for dismissal, we ordered the two actions consolidated for purposes of appeal.

## II.    STANDARD OF REVIEW

We review de novo a Federal Rule of Civil Procedure 12(b)(6) dismissal for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Belanger v. Salvation Army*, 556 F.3d 1153,

---

[2] The Statute was amended in 2021. The relevant interest provision was unchanged, but now appears in a different subsection. *See* Fla. Stat. § 627.70131(7)(a) (2022). Neither Party contends that the amendment substantively effected the statute or its applicability to this appeal. Like the district courts below, we refer to the applicable statutory section as (5)(a), even though it is now codified at (7)(a).

1155 (11th Cir. 2009).  We also review a district court's interpretation of a statute de novo.  *Id.*

## III.    ANALYSIS

Appellants' insurance policies with Appellees do not contain a standalone contractual provision obligating interest in the event of late payment of a claim.  Despite the absence of any such provision, Appellants nevertheless pursue breach-of-contract actions against Appellees for their alleged failure to pay out interest on untimely claims payments.  Appellants argue that Appellees are contractually obligated to pay them interest because their policies implicitly incorporate Fla. Stat. § 627.70131(5)(a), which contains an interest-payment provision in the event of late payment.

But predicating their breach-of-contract claims on Subsection 5(a) cannot salvage those claims.  Even granting Appellants' contention that their policies implicitly incorporate Subsection 5(a)'s interest-payment provision, Subsection 5(a) itself, as interpreted by binding Florida precedent, forecloses Appellants' breach-of-contract actions.

Fla. Stat. § 627.70131(5)(a) provides as follows:

Any payment of an initial or supplemental claim … made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest at the rate set forth in s.55.03. Interest begins to accrue from the date the

23-11678                Opinion of the Court                7

insurer receives notice of the claim. The provisions of
this subsection may not be waived, voided, nullified
by the terms of the insurance policy ... *However, failure
to comply with this subsection does not form the sole basis
for a private cause of action.*

*Id.* (emphasis added).

Florida law interprets the emphasized language above as "clos[ing]
the door on any insured unless there is a viable independent cause
of action" to seek interest on their claim. *State Farm Fla. Ins. Co. v.
Silber*, 72 So. 3d 286, 290 (Fla. 4th Dist. Ct. App. 2011). In other
words, Subsection 5(a) bars any private action predicated solely on
non-compliance with Subsection 5(a).

In *Taylor v. State Farm Fla. Ins. Co.*, Florida's Fifth District
Court of Appeal clarified that "a standalone independent obligation
to pay interest" can form the basis for a private action for breach-
of-contract "that is not precluded by the statutory limitation on ac-
tions." 388 So. 3d 307, 311 (Fla. 5th Dist. Ct. App. 2024).[3] The court
found that an insurance policy provision stating that "interest will
be paid in accordance with § 627.70131(5)" gave rise to a private
action for breach-of-contract because such a provision constitutes
"*a separate and independent* loss payment provision" and "the only

---

[3] *Taylor* was first issued subsequent to Appellants' opening briefs and then re-
heard and reissued after the completion of the parties' briefing. This opinion
references only the superseding opinion.

reference to section 5(a)…simply deals with the manner in which interest will be paid." *Id.* at 310 (emphasis added).

Crucially, however, in holding so, *Taylor* expressly distinguished the district courts' decisions in the consolidated cases before us. As the *Taylor* court explained, while the plaintiffs' claim there arose from an "express contractual promise to pay interest," Appellants' claims here were "statutory claims *barely clothed* as contractual ones." *Id.* at 310 n.3 (emphasis added). Thus "those [i.e. Appellants'] statutory claims in breach-of-contract clothing are readily distinguishable from the true contractual claim…here, as the parties' contract contains an express promise to pay interest." *Id.*

As the court held in *Taylor*, it is immaterial that Appellants couch their claims as sounding in breach-of-contract when the predicate basis for their claims is Subsection 5(a). *Id.* In such instances, Subsection 5(a)'s private action bar applies, as it is the defendants' "failure to comply with [5(a)]" that actually "form[s] the sole basis for a private cause of action." § 627.70131(5)(a).

Indeed, in *Sandra Safont, et al, v. State Farm Florida Ins. Co.*, this Court characterized a hypothetical insurance policy provision that "explicitly incorporated [5(a)] into the [p]olicy as giving rise to a claim for "breach of the *statute* rather than a breach of the[] *contract*." 2025 WL 212286, at *3 n.4 (11th Cir. Jan. 16, 2025) (emphasis in original). We distinguished that hypothetical from the allegations before us, which, like *Taylor*, alleged contractual breach based on "a separate and independent loss payment provision

that…provided for the payment of interest." *Id*. at *3 (quoting *Taylor*, 388 So. 3d at 310).

And review of the allegations presented in Appellants' respective complaints confirms that their breach-of-contract claims are thinly disguised claims for statutory breach of Subsection 5(a). The *Riley* Plaintiffs' complaint alleges that "[a]lthough not referenced in the Policy, Section 627.701317[5](a)…provides that interest must be included with [late claim payments]" and that "[a]s a result of Heritage's failure to timely pay, Plaintiffs were entitled to payment of interest as required by the Policy's Loss payment provision *and the statutory language incorporated in that provision*." (emphasis added). The *Williams* Plaintiffs' complaint makes substantively identical allegations. Such "statutory claims in breach-of-contract clothing" are not "true contractual claim[s]" and are therefore precluded by Subsection 5(a)'s private action bar. *See Taylor*, 388 So. 3d 310 n.3.

Besides conflicting with binding Florida precedent, Appellants' "breach-of-contract via implied incorporation of Subsection 5(a)" theory lacks merit. Accepting Appellants' contention[4] that

---

[4] Appellants argue, without citation to any on-point authority, that Subsection 5(a)'s provision providing that "[t]he provisions of this subsection may not be waived, voided, nullified by the terms of the insurance policy," along with Fl. Stat. § 627.418(1)'s requirement that policy terms "not in compliance with the requirements" of the insurance code "shall be construed" as being "in full compliance with" the code, somehow effect an implicit incorporation of Subsection 5(a)'s interest-payment provision into all insurance policies.

Subsection 5(a) and Fl. Stat. § 627.418(1) effect an implicit incorpo-ration of Subsection 5(a)'s interest payment provision into all insur-ance policies renders its statutory bar provision a nullity—a plain-tiff could *always* circumvent the statutory bar on private actions by simply recharacterizing their claim as a contractual breach of the "implied" interest-payment provision. But relegating Subsection 5(a)'s statutory bar provision "to insignificance would run counter to the Supreme Court's consistent refusal to construe statutes 'in a manner that renders [them] entirely superfluous in all but the most unusual circumstances.'" *In re Shek*, 947 F.3d 770, 778 (11th Cir. 2020) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 103 (2012)). Appellants offer no compelling response on this point.

Thus, either (1) Subsection 5(a)'s statutory bar on private actions still precludes a breach-of-contract action under Appellants' theory or (2) Appellants are wrong that Florida's insurance code effects an implicit incorporation of Subsection 5(a)'s interest-

---

Besides lacking any real legal support for this contention, as the district courts and Appellees correctly note, Appellants fail to identify any material provision of the insurance policies that contravenes the terms of Subsection 5(a) or the Florida insurance code more generally. So Subsection 5(a)'s prohibition on waiving or nullifying its terms has no application here. Nor does § 627.418(1). At bottom, Appellants do not explain why Subsection 5(a)'s interest payment provision must be impliedly incorporated into every insurance policy. The above provisions Appellants rely on simply invalidate policy terms that di-rectly *conflict* with the Florida code. Here, Appellees' insurance policies do not contain terms governing interest payment that conflict with Subsection 5(a) for they do not contain terms obligating interest payments at all.

23-11678                Opinion of the Court                11

payment provision.    Regardless, Appellants' breach-of-contract claims fail.

Appellants rely heavily on the Florida Supreme Court's decision in *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188 (Fla. 2006) to support their theory, but that case has no bearing on the proper interpretation of Subsection 5(a). There, the Florida Supreme Court held that the "prompt pay provisions" of the Health Maintenance Organization ("HMO") Act are implicitly incorporated into HMO contracts to establish a breach-of-contract. *Id.* at 195–97. Besides dealing with a different statute altogether, *Westside* predicated its holding on two immediately distinguishable facts: (1) that the prompt pay provision is impliedly incorporated into all HMO contracts because "a number of other provision reveal [that] that 'prompt pay provision' serves an integral role in providing substance…to the rights of subscribers and responsibilities of HMOs established in the HMO Act" and (2) that "the HMO Act does not foreclose a common law contract action for breach of the statutorily imposed prompt payment provision." *Id.* at 196.

Appellants provide no analogous rationale justifying implicit incorporation of Subsection 5(a)'s interest-payment provision into every insurance policy. But more significantly, unlike the HMO Act, Subsection 5(a) *does* foreclose private actions for breach of the statutorily imposed interest-payment provision. Thus, as the district courts correctly reasoned, it would be "illogical for the interest-payment requirement of Subsection (5)(a) to be imported into the policy…without also incorporating Subsection (5)(a)'s private-

cause-of-action bar." *Williams,* 2023 WL 3750608, at *1 (alterations adopted) (quoting *Riley,* 2023 WL 2988847, at *3). That is the immovable object Appellants cannot surmount—dressing up Appellees' alleged statutory violation as a contractual breach cannot facilitate bypass of Subsection 5(a)'s private action bar.

## IV. CONCLUSION

For these reasons, we affirm the dismissal of the Appellants' breach-of-contracts claims.

**AFFIRMED.**